Benjamin Heikali (SBN 307466)
Joshua Nassir (SBN 318344)
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
E-mail: bheikali@faruqilaw.com
        jnassir@faruqilaw.com

*Attorneys for Plaintiff Rebecca Correia*

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA CORREIA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JOHNSON & JOHNSON CONSUMER INC.,<br><br>Defendant. | Case No.: 2:18-cv-09918<br><br>**CLASS ACTION COMPLAINT**<br><br>1. **Violation of California Civil Code §1750,** *et seq.*<br><br>2. **Violation of California Business and Professions Code § 17200,** *et seq.*<br><br>3. **Violation of California Business and Professions Code § 17500,** *et seq.*<br><br>4. **Common Law Fraud**<br><br>5. **Quasi-Contract/Restitution**<br><br>6. **Trespass to Chattel**<br><br>7. **Conversion**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Rebecca Correia ("Plaintiff"), by and through her counsel, brings this Class Action Complaint against Johnson & Johnson Consumer Inc. ("Defendant"), on behalf of herself and all others similarly situated, and alleges upon personal knowledge as to her own actions, and upon information and belief as to counsel's investigations and all other matters, as follows:

## **NATURE OF THE ACTION**

1.      Plaintiff brings this consumer protection and false advertising class action lawsuit against Defendant, based on Defendant's false and misleading business practices with respect to the marketing and sale of its Neutrogena® Light Therapy Acne Mask ("the Mask") and Neutrogena® Light Therapy Acne Mask Activator ("the Activator") (collectively, the "Product(s)").[1]

2.      The Mask is an acne treatment device. It operates by emitting blue and red light-emitting diode ("LED") lights installed on the interior of the Mask onto the user's skin. The Mask is powered by a battery located in the Activator, which connects directly to the Mask. Each time the consumer turns on the Activator, the Mask supplies one ten-minute therapy session. The Product comes with one Activator included.

3.      At all relevant times, Defendant has labeled, marketed, and sold the Product with the representation that the Activator contains only "30 Daily Treatments".[2]

4.      Each treatment session is programmed to last ten minutes.[3]

5.      Therefore, Defendant represents that each Activator has the capacity of 300 minutes, or five hours, of treatment.

6.      After 30 uses of the Activator, the Activator will no longer function, and consumers are required to purchase an additional Activator if they wish to continue

---

[1] Depicted *infra* in paragraphs 26-28.
[2] https://www.neutrogena.com/skin-treatments/skin-treatments-devices/light-therapy-acne-mask-activator/6810126.html (last visited November 20, 2018).
[3] https://www.neutrogena.com/skin-acne/light-therapy-acne-mask/6810124.html (last visited November 20, 2018).

**CLASS ACTION COMPLAINT**

using the Mask. In fact, Defendant represents on the Product packaging that consumers

must "[p]urchase a new Activator when the 30 treatment-sessions run out":[4]



7.      However, unbeknownst to consumers, Defendant has manufactured a

product of planned obsolescence. Defendant intentionally engineered the Activator to

stop providing power before the Activator runs out of battery. Consumers are not

receiving all the power, and therefore treatment sessions, available through the

Activator's battery. Other than its battery, the sole function of the Activator is to count

off an arbitrary 30 treatment sessions and then terminate the consumer's use of the

[4] https://www.walmart.com/ip/Neutrogena-Light-Therapy-Acne-Treatment-Face-Mask/168984043 (last visited November 20, 2018).

**CLASS ACTION COMPLAINT**

Activator thereafter.

8.     The Products' patent sheds further light on this deception, revealing that the Activator was originally set to 55 uses, and that users could turn on and sample the Activator in-store without using any treatment sessions. The number of treatment sessions would begin to count down only after the Products were removed from their packaging.

9.     Therefore, the representation that the Activator only "contains 30 daily treatments" is misleading. Defendant requires and informs consumers to replace or discard their Activators despite the Activators containing enough battery power to provide a substantial number of additional treatment sessions. By restricting the number of treatment sessions, Defendant is able to maximize its profits by inducing consumers to throw away their Activators, despite still having enough to charge to provide additional treatment sessions, in order for consumers to purchase additional Activators.

10.    Plaintiff and other consumers purchased the Products, reasonably relying on Defendant's deceptive representation that the Activator only has the capacity to provide thirty, ten-minute treatment sessions to the Mask. From these representations, consumers have a reasonable expectation that, when purchasing the Products, they have purchased all the power, and therefore treatment sessions, allowable by the Activator's battery.

11.    This expectation is reinforced considering that, normally, a battery provides power until it is empty, at which point the battery must be replaced. However, Plaintiff and consumers are unable to use a large percentage of the Activator's battery for which they paid.

12.    Had Plaintiff and consumers known that they would not receive the full value from batteries, as the Activators still allowed for a substantial number of additional treatment sessions after the initial 30 uses, they would not have purchased

**CLASS ACTION COMPLAINT**

the Products or replacement Activators, or they would have paid less for them. Therefore, Plaintiff and consumers have suffered injury in fact as a result of Defendant's deceptive practices.

13. Plaintiff brings this class action lawsuit on behalf of herself and all others similarly situated. Plaintiff seeks to represent a California Subclass, a California Consumer Subclass, and a Nationwide Class (defined *infra* in paragraphs 45-50) (collectively referred to as "Classes").

14. Plaintiff, on behalf of herself and other consumers, is seeking damages, restitution, declaratory and injunctive relief, and all other remedies the court deems appropriate.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed Classes are in excess of $5,000,000, exclusive of interests and costs, and Plaintiff, as well as most members of the proposed Classes, which total more than 100 class members, are citizens of states different from the state of Defendant.

16. This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts in California or otherwise intentionally did avail and direct itself of the markets within California, through its sale and widespread distribution of the Products in California and to California consumers. Further, Defendant maintains its Neutrogena division in Los Angeles, California. Based on information and belief, the marketing, labeling, and packaging of the Products emanated from California.

17. Venue is proper in this District pursuant to 28 U.S.C. 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this District. Specifically, the marketing and labeling of the Products, and the decisions underlying

**CLASS ACTION COMPLAINT**

the marketing and labeling, which form the bases of this action, emanated from Defendant's Neutrogena division, located in Los Angeles, California.

## **PARTIES**

18.     Plaintiff Rebecca Correia is a citizen of Idaho, residing in Boise. In April 2018, Ms. Correia purchased the Products at a Walmart retail location in Boise, Idaho. Ms. Correia purchased the Products, reasonably relying on the Defendant's representation that the Activator contains the capacity to provide only thirty daily treatment sessions and must be replaced after thirty uses. Acting in accordance with Defendant's representations, once Plaintiff used the Activator for thirty treatment sessions, she discarded the Activator. Ms. Correia would have paid significantly less for the Products had they known that the Activator's battery was not depleted, but rather allowed for additional treatment sessions but for Defendant's intentional design to prematurely cut off power. Ms. Correia therefore suffered injury in fact and lost money as a result of Defendant's misleading, false, unfair, and fraudulent practices, as described herein. Despite being deceived by Defendant, Ms. Correia wishes and is likely to continue purchasing acne treatment mask devices and/or activators in the future, including the Products. Although Ms. Correia regularly visits stores where Defendant's Products are sold, because she was deceived in the past by Defendant, she will be unable to rely with confidence on Defendant's representations in the future and will therefore abstain from purchasing the Products, even though she would like to purchase them. In addition, members of the proposed classes run the risk of continuing to purchase the Products, under the reasonable, but incorrect, assumption that Defendants no longer restricts the Activator's power supply, and therefore, the Activator's ability to provide treatment sessions. Therefore, Plaintiff requests this Court enjoin Defendant from selling the Products in the future until Defendant remedies the false and deceptive representations.

19.     Defendant Johnson & Johnson Consumer Inc. is incorporated in New

**CLASS ACTION COMPLAINT**

Jersey, with its principal place of business in Skillman, New Jersey. Defendant directly and/or through its agents, designs, manufactures, labels, markets, distributes, and sells the Products nationwide, including in California. Defendant has maintained substantial distribution and sales in this District. Additionally, Defendant maintains and operates its Neutrogena division, the marketers and distributors of the Products, in Los Angeles, California.

## FACTUAL ALLEGATIONS

### I.    History of the Products

20.    In 2015, Defendant acquired La Lumiere, LLC ("La Lumiere"). La Lumiere manufactured and sold the predecessor of the Products, called the Illumask.[5] Like the Products, the Illumask was sold with an LED mask and battery-powered activator.

21.    La Lumiere's patent of the Illumask is attached hereto as **Exhibit A** (the "Patent").

22.    The Patent demonstrates that the Activator has the capacity to provide more than thirty treatment sessions. The Patent explains that the Products allow consumers to use a "'try-me mode' wherein the LEDs will light up for two seconds, then turn off." Patent at 7.  However, the Activator's "counter value is not affected by any try-me sampling operation", but only begins to subtract uses once the "device is removed from the packaging" *Id.* This means that consumers can sample the Activator in-store without using any available treatment sessions. The sole purpose of the treatment session limitation is to increase the frequency of Activator purchases.

23.    The significance of the try-me sampling operation is that the Mask has the potential to be turned on by the Activator's battery without reducing the number of treatment sessions remaining. Rather, the Activator would only subtract uses once the Products were removed from the packaging. Essentially, the Activator's treatment

---

[5] http://wwd.com/beauty-industry-news/skin-care/neutrogena-built-monster-hit-10728472/ (last visited November 21, 2018)

**CLASS ACTION COMPLAINT**

counter does not reflect the true capacity of the Product to function, but merely an arbitrary number chosen by Defendant. Defendant had, and continues to have, the ability to extend the ability to use the Activator without affecting the number of remaining treatment sessions to the Products sold to Plaintiff and other consumers.

24.    Further, the Patent explains that the Activator's counter, prior to Defendant's acquisition of La Lumiere, was, or could have been, set to "55 uses". Patent at 7.  This reinforces the fact that Defendant's representation that the Activator only contains thirty treatment sessions is false. The Products have the capability to allow as many treatments as the Activator's battery could power. At the very least, the Products have the ability to allow for the Activator to be set for 55 uses, as opposed to 30.

## II.    Defendant's False And Misleading Advertising Of The Products

25.    At all relevant times, Defendant directly and/or through its agents, have manufactured, labeled, marketed, designed, distributed, and sold the Products across California and the United States. The Products are sold in store and/or online at various retailers and pharmacies including, but not limited to, Target, Neutrogena.com, Amazon.com, Walgreens, and Walmart.

26.    As depicted below, Defendant conspicuously represents on the front packaging of the Products that the Activator only provides "30 daily treatment-sessions[.]":[6]

---

[6] https://www.neutrogena.com/skin/skin-acne/light-therapy-acne-mask/6810124.html (last visited November 20, 2018).

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



21        27.    The back of the Products' packaging also represents that the Activator

22  provides the "number of treatment-sessions remaining[.]":[7]

23
24
25
26
27  _____

[7] https://www.walmart.com/ip/Neutrogena-Light-Therapy-Acne-Treatment-Face-Mask/168984043

28  (last visited November 20, 2018).

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23



24      28.    The Activator's front package represents that it only "contains 30 daily
25  treatments":[8]
26
27
28

---

[8] https://www.neutrogena.com/skin/skin-treatments/skin-treatments-devices/light-therapy-acne-mask-activator/6810126.html (last visited November 20, 2018).

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22



23  29.    From these representations, Defendant warrants to consumers that the
24  Activator only has the capacity to provide thirty, ten-minute treatment sessions.

25  30.    Accordingly, Defendant also represents that, subsequent to thirty
26  treatment sessions, consumers must discard their Activator and purchase a replacement
27  Activator if they desire to continue receiving treatments.

28

**CLASS ACTION COMPLAINT**

31.     In fact, Defendant represents on the Product packaging that consumers must "[p]urchase a new Activator when the 30 treatment-sessions run out":[9]



32.     However, unbeknownst to Plaintiff and other consumers, Defendant has intentionally engineered the Activator to stop providing power before the Activator's battery is fully discharged. Even after the thirty applications have been completed, the Activator's battery has the capacity to provide additional treatment sessions to the Mask.

33.     The Products' patent demonstrates that a replacement Activator is not truly needed. According to the patent, the Activator was originally designed to provide

_____

[9] https://www.walmart.com/ip/Neutrogena-Light-Therapy-Acne-Treatment-Face-Mask/168984043 (last visited November 20, 2018).

**CLASS ACTION COMPLAINT**

55 treatment sessions. Further, the Activator allowed for a "try-me" mode, where consumers can turn on the Activator in-store without using any treatment sessions. The number of available treatment sessions would only count down once the Products were removed from the packaging. The number of treatment sessions remaining is arbitrarily determined and not based on any estimate of remaining battery power."

34.    Thus, Defendant represents that the Activator's battery is empty, and that a replacement Activator is needed, when it is not. In doing so, Defendant deceived consumers into discarding or purchasing new Activators when the Activator still had enough battery power to provide additional treatment sessions.

35.    For this reason, Defendant also deceived consumers who solely purchased the Mask and Activator together, but not subsequent, replacement activators. These consumers discarded their Activators, reasonably relying on Defendant's representation that the Activator no longer has the capacity to provide additional treatment sessions. However, the Activators still had value in the form of remaining battery power, and therefore treatment sessions, remaining.

36.    Defendant knew or should have known that the Products are able to provide more than thirty, ten-minute treatment sessions because Defendant and/or its agents formulated, designed, and/or manufactured the Products. The aforementioned patent further reveals this knowledge.

37.    Defendant knew or should have known that Plaintiff and other consumers, in purchasing the Products, would rely on Defendant's representation about the Products and would therefore reasonably believe that the Activator only has the capacity to power the Mask for thirty, ten-minute treatment sessions.

38.    Plaintiff's expectations coincide with reasonable consumer behavior. When consumers purchase a battery or battery-powered device with batteries included, like the Activator, they reasonably assume that they are purchasing the battery's full capacity. Normally, a battery produces power until it is discharged. Consumers only

**CLASS ACTION COMPLAINT**

expect to replace a battery once it is depleted, unable to produce any additional power for its purpose. However, the Activator has the capacity to provide more than thirty treatment sessions. Consumers are unable to use a considerable portion of the Activator's battery for which they paid. Defendant simply sought to have a perpetual revenue stream at the cost of deceived consumers and substantial waste in regard to batteries and activators.

39.     In reasonable reliance on Defendant's representation regarding the Activator's capacity for daily treatment sessions, Plaintiff and other consumers purchased the Products.

40.     Plaintiff and other consumers did not know, and had no reason to know, that the Activator contains the capacity to provide more than thirty daily, ten-minute treatment sessions. This is because Plaintiff and consumers reasonably and justifiably relied on Defendant's representations regarding the Products.

41.     Because the Activator has the capacity to contain more than thirty ten-minute treatment sessions, Defendant's uniform practice regarding the marketing and sale of the Products was and continues to be misleading and deceptive.

42.     Each consumer has been exposed to the same or substantially similar deceptive practice, as at all relevant times, (1) Defendant uniformly represented on each of the Products that the Activator solely contains the capacity for thirty ten-minute treatment sessions, and (2) each of the Activators contain the capacity to supply significantly more than thirty ten-minute treatment sessions.

43.     Plaintiff and other consumers have paid an unlawful premium for the Products. Plaintiff and other consumers would have paid significantly less for the Products had they known that the Activator's battery was not depleted at the end of thirty sessions, but rather intentionally designed to prematurely cut off power. Therefore, Plaintiff and other consumers purchasing the Products suffered injury in fact and lost money as a result of Defendant's false, misleading, unfair, and fraudulent

**CLASS ACTION COMPLAINT**

1    practices, as described herein.

2        44.    As a result of their misleading business practice, and the harm caused to

3    Plaintiff and other consumers, Defendant should be required to pay for all damages

4    caused to consumers, including Plaintiff. Furthermore, Defendant should be enjoined

5    from engaging in these deceptive practices.

6                          **CLASS ACTION ALLEGATIONS**

7        45.    Plaintiff brings this case as a class action that may be properly maintained

8    under Federal Rule of Civil Procedure 23 on behalf of herself and all persons in the

9    United States, who within the relevant statute of limitations periods, purchased any of

10   the Products ("Nationwide Class").

11       46.    Plaintiff also seeks to represent a subclass defined as all California

12   residents, who within the relevant statute of limitations periods, purchased any of the

13   Products ("California Subclass").

14       47.    Plaintiff also seeks to represent a subclass defined as all California

15   residents, who within the relevant statute of limitations periods, purchased any of the

16   Products for personal, family, or household purposes ("California Consumer

17   Subclass").

18       48.    Excluded from the Classes are Defendant, the officers and directors of the

19   Defendant at all relevant times, members of their immediate families and their legal

20   representatives, heirs, successors or assigns and any entity in which Defendant has or

21   had a controlling interest. Any judge and/or magistrate judge to whom this action is

22   assigned and any members of such judges' staffs and immediate families are also

23   excluded from the Classes. Also excluded from the Classes are persons or entities that

24   purchased the Products for sole purposes of resale.

25       49.    Plaintiff hereby reserves the right to amend or modify the class definitions

26   with greater specificity or division after having had an opportunity to conduct

27   discovery.

28

**CLASS ACTION COMPLAINT**

50.     Plaintiff is a member of all Classes.

51.     <u>Numerosity</u>:   Defendant has sold tens of thousands of units of the Products.  The Products is sold in store and/or online at various retailers including, but not limited to, Target, Amazon.com, Walgreens, and Walmart. Accordingly, members of the Classes are so numerous that their individual joinder herein is impractical. While the precise number of class members and their identities are unknown to Plaintiff at this time, the number may be determined through discovery.

52.     <u>Common Questions Predominate</u>: Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual class members. Common legal and factual questions include, but are not limited to, whether Defendant's representation that the Activator only contains the capacity for thirty ten-minute treatment sessions, despite Defendant purposefully designing the Activator to become obsolete after thirty uses and whether the Activator containing the capacity for substantially more treatment sessions, despite its representations, was an unfair and deceptive trade practice, and therefore violated various consumer protection statutes and common laws.

53.     <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Classes she seeks to represent in that Plaintiff and members of the Classes were all exposed to the same or substantially similar false and misleading representation, purchased the Products relying on the uniform false and misleading representations, and suffered losses as a result of such purchases.

54.     <u>Adequacy</u>: Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the members of the Classes she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of the members of the Classes will be fairly and adequately protected by the Plaintiff and her counsel.

16
**CLASS ACTION COMPLAINT**

55.    <u>Superiority</u>: A class action is superior to other available means for the fair and efficient adjudication of the claims of the members of the Classes. The size of each claim is too small to pursue individually, and each individual Class member will lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. The class action mechanism is designed to remedy harms like this one that are too small in value, although not insignificant, to file individual lawsuits for.

56.    This lawsuit is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted or refused to act on grounds that are generally applicable to the class members, thereby making final injunctive relief appropriate with respect to all Classes.

57.    This lawsuit is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3) because the questions of law and fact common to the members of the Classes predominate over any questions that affect only individual members, and because the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy.

**FIRST CLAIM FOR RELIEF**
**Violation of California's Consumers Legal Remedies Act ("CLRA"),**
**California Civil Code §§ 1750, *et seq*.**
***(for the California Consumer Subclass)***

58.    Plaintiff repeats the allegations contained in paragraphs 1-57 above as if fully set forth herein.

59.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Consumer Subclass against Defendant.

17
**CLASS ACTION COMPLAINT**

60.     The Products are a "good" pursuant to California Code of Civil Procedure ("Cal. Civ. Code") § 1761(a), and the purchases of the Products by Plaintiff and members of the California Consumer Subclass constitute "transactions" pursuant to Cal. Civ. Code § 1761(e).

61.     Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ." By representing that the Activator's capacity is limited to thirty ten-minute treatment sessions, and that the Activator did not have any charge remaining when it did, Defendant misrepresented the Products' characteristics. Therefore, Defendant has violated section 1770(a)(5) of the CLRA.

62.     Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style of model, if they are another." By representing that the Activator's capacity is limited to thirty ten-minute treatment sessions, and that the Activator did not have any charge remaining when it did, Defendant represented that the Products are of a particular standard and/or quality when they are not. Therefore, Defendant violated section 1770(a)(7) of the CLRA.

63.     Cal. Civ. Code § 1770(a)(15) prohibits "[r]epresenting that a part, replacement, or repair service is needed when it is not." By representing that the Activator only contains thirty ten-minute treatment sessions, Defendant represents that a replacement Activator is required after thirty uses. However, for the reasons stated above, the Activator still had battery charge, and therefore treatment sessions, remaining despite Defendant's representation to the contrary. Therefore, Defendant violated section 1770(a)(15) of the CLRA.

64.     At all relevant times, Defendant knew or reasonably should have known that the Activator contains enough charge for more than thirty ten-minute treatment sessions, and that Plaintiff and other members of the California Consumer Subclass

**CLASS ACTION COMPLAINT**

would reasonably and justifiably rely on the representations about the Products in purchasing and prematurely discarding them.

65.   Plaintiff and members of the California Consumer Subclass reasonably and justifiably relied on Defendant's misleading and fraudulent representations about the Products when purchasing them. Moreover, based on the very materiality of Defendant's fraudulent and misleading conduct, reliance on such conduct as a material reason for the decision to purchase the Products may be presumed or inferred for Plaintiff and members of California Consumer Subclass.

66.   Plaintiff and members of the California Consumer Subclass suffered injuries caused by Defendant because they would not have purchased the Products or would have paid significantly less for the Products, had they known that Defendant's conduct was misleading and fraudulent.

67.   Under Cal. Civ. Code § 1780(a), Plaintiff and members of the California Consumer Subclass seek damages, restitution, declaratory and injunctive relief, and all other remedies the Court deems appropriate for Defendant's violations of the CLRA.

68.   Pursuant to Cal. Civ. Code § 1782, on May 30, 2018, counsel for Plaintiff mailed a notice and demand letter by certified mail, with return receipt requested, to Defendant.[10] Defendant received the notice and demand letter on June 4, 2018. Because Defendant has failed to fully rectify or remedy the damages caused within 30 days after receipt of the notice and demand letter, Plaintiff is timely filing this Class Action Complaint for a claim for damages under the CLRA.

**SECOND CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law ("UCL"),**
**California Business & Professions Code §§ 17200, *et seq.***
***(for the California Subclass and California Consumer Subclass)***

69.   Plaintiff repeats the allegations contained in paragraphs 1-57 above as if fully set forth herein.

---

[10] S*ee* Exhibit "A."

19
**CLASS ACTION COMPLAINT**

70.   Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass and California Consumer Subclass against Defendant.

71.   UCL §17200 provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

72.   Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law.

73.   Defendant's false and misleading advertising of the Product therefore was and continues to be "unlawful" because it violates the CLRA, California's False Advertising Law ("FAL"), and other applicable laws as described herein.

74.   As a result of Defendant's unlawful business acts and practices, Defendant has and continues to unlawfully obtain money from Plaintiff, and members of both the California Subclass and California Consumer Subclass.

75.   Under the UCL, a business act or practice is "unfair" if the Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

76.   Defendant's conduct was and continues to be misleading, unfair, unlawful, and is injurious to consumers who rely on the representations about the Products and were deceived by Defendant's conduct. Deceiving consumers by purposefully limiting the efficacy and capacity of the Activator, and convincing users to discard Activators which still had remaining battery charge, is of no benefit to the consumers, especially when they are paying a premium for the Products. Therefore, Defendant's conduct was and continues to be "unfair."

77.   As a result of Defendant's unfair business acts and practices, Defendant has and continues to unfairly obtain money from Plaintiff, and members of both the

**CLASS ACTION COMPLAINT**

1    California Subclass and California Consumer Subclass.

2        78.    Under the UCL, a business act or practice is "fraudulent" if it actually

3    deceives, or is likely to deceive, members of the consuming public.

4        79.    Defendant's conduct here was and continues to be fraudulent because it

5    has and will continue to likely deceive consumers into believing that the Activator no

6    longer has any remaining battery charge, and therefore treatment sessions, after

7    consumers have used thirty treatment sessions. Because Defendant misled and will

8    likely continue to mislead Plaintiff and members of both the California Subclass and

9    California Consumer Subclass, Defendant's conduct was "fraudulent."

10       80.    As a result of Defendant's fraudulent business acts and practices,

11   Defendant has and continues to fraudulently obtain money from Plaintiff, and members

12   of both the California Subclass and California Consumer Subclass.

13       81.    Plaintiff requests that this Court cause Defendant to restore this

14   unlawfully, unfairly, and fraudulently obtained money to Plaintiff, and members of

15   both the California Subclass and California Consumer Subclass, to disgorge the profits

16   Defendant made on these transactions, and to enjoin Defendant from violating the UCL

17   or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff,

18   and members of both the California Subclass and California Consumer Subclass may

19   be irreparably harmed and/or denied an effective and complete remedy if such an order

20   is not granted.

21                    **THIRD CLAIM FOR RELIEF**
22            **Violation of California's False Advertising Law ("FAL"),**
             **California Business & Professions Code §§ 17500, *et seq***
23           ***(for the California Subclass and California Consumer Subclass)***

24       82.    Plaintiff repeats the allegations contained in paragraphs 1-57 above as if

25   fully set forth herein.

26       83.    Plaintiff brings this claim individually and on behalf of the members of

27   the proposed California Subclass and California Consumer Subclass against

28

Defendant.

84.    California's FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code §§ 17500.

85.    Defendant has represented and continue to represent to the public, including Plaintiff and members of both the California Subclass and California Consumer Subclass, that an Activator only contains the capacity to provide thirty treatment sessions to the Mask. Defendant's representation is false and misleading as the Activator contains enough battery charge for more than thirty treatment sessions. Because Defendant has disseminated false and misleading information regarding their Products, and Defendant knew, or should have known through the exercise of reasonable care, that the information was and continues to be false and misleading, Defendant has violated the FAL and continues to do so.

86.    As a result of Defendant's false advertising, Defendant has and continues to fraudulently obtain money from Plaintiff and members of both the California Subclass and California Consumer Subclass.

87.    Plaintiff requests that this Court cause Defendant to restore this fraudulently obtained money to Plaintiff and members of both the California Subclass and California Consumer Subclass, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of both the California Subclass and California Consumer Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**CLASS ACTION COMPLAINT**

## FOURTH CLAIM FOR RELIEF
### Common Law Fraud
*(for the Classes)*

88.    Plaintiff repeats the allegations contained in paragraphs 1-57 above as if fully set forth herein.

89.    Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

90.    Defendant has willfully, falsely, and knowingly manufactured the Activator to limit the number of ten-minute treatments to thirty sessions. However, the Activator has the capacity to supply substantially more than thirty ten-minute treatment sessions. Despite this increased capacity, Defendant has intentionally represented that the Products' have a limited capacity of thirty treatments. Therefore, Defendant has made an intentional misrepresentation as to the Products.

91.    Defendant's misrepresentations were material (i.e., the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making purchase decisions), because they relate to the composition of the Products.

92.    Defendant knew or recklessly disregarded the fact that the Products have the capacity to provide more than thirty ten-minute treatment sessions.

93.    Defendant intended that Plaintiff and other consumers rely on this representation, as the representation is made on the front and back panel of the Products' labels.

94.    Plaintiff and members of the Classes have reasonably and justifiably relied on Defendant's misrepresentation when purchasing the Products and had the correct facts been known, would not have purchased them at the prices at which they were offered.

95.    Therefore, as a direct and proximate result of Defendant's fraud, Plaintiff and members of the Classes have suffered economic losses and other general and

**CLASS ACTION COMPLAINT**

specific damages, including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
### Quasi Contract/Restitution
### (*for the Classes*)

96.    Plaintiff repeats the allegations contained in paragraphs 1-57 above as if fully set forth herein.

97.    Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

98.    As alleged herein, Defendant intentionally and recklessly made a misleading representation about the Products to Plaintiff and members of the Classes to induce them to purchase and/or replace the Products. Plaintiff and members of the Classes have reasonably relied on the misleading representation and have not received all of the benefits promised by Defendant (i.e., all the battery charge located in the Activator). Plaintiff and members of the Classes therefore have been induced by Defendant's misleading and false representations about the Products, and discarded their Activators prematurely, paid for the Products when they would and/or should not have, or paid more money to Defendant for the Products than they otherwise would and/or should have paid.

99.    Plaintiff and members of the Classes have conferred a benefit upon Defendant as Defendant has retained monies paid to them by Plaintiff and members of the Classes.

100.    The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the Classes – i.e., Plaintiff and members of the Classes did not receive the full value of the benefit conferred upon Defendant.

101.    Further, monetary damages are an inadequate remedy at law because

**CLASS ACTION COMPLAINT**

1   injunctive relief is necessary to deter Defendant from continuing its false and deceptive

2   conduct regarding the Products.

3       102.   Therefore, it is inequitable and unjust for Defendant to retain the profit,

4   benefit, or compensation conferred upon them without paying Plaintiff and the

5   members of the Classes back for the difference of the full value of the benefit compared

6   to the value actually received.

7       103.   As a direct and proximate result of Defendant's unjust enrichment,

8   Plaintiff and members of the Classes are entitled to restitution, disgorgement, and/or

9   the imposition of a constructive trust upon all profits, benefits, and other compensation

10  obtained by Defendant from their deceptive, misleading, and unlawful conduct as

11  alleged herein.

12              **SIXTH CLAIM FOR RELIEF**

13              **Trespass to Chattel**

14              (**for the Classes**)

15      104.   Plaintiff repeats the allegations contained in paragraphs 1-57 above as if

16  fully set forth herein.

17      105.   Plaintiff brings this claim individually and on behalf of the members of

18  the Classes against Defendant.

19      106.   Plaintiff and the Class purchased, owned, and had the right to possess and

20  use the Products they purchased, including the battery contained in the Activators.

21      107.   Defendant intentionally interfered with Plaintiffs' use and/or possession

22  of the Product and has damaged the Product by purposefully programming the

23  Activator to stop producing charge, and therefore treatment sessions, when the battery

24  was not empty, thus depriving Plaintiff of her remaining battery charge.

25      108.   Plaintiff did not consent to nor was Plaintiff aware of Defendant's actions.

26      109.   As a direct and proximate result of Defendant's intentional trespass to

27  Plaintiff and members of the Classes' property, Plaintiff and members of the Classes

28

**CLASS ACTION COMPLAINT**

have suffered economic losses and other general and specific damages, including but not limited to the price paid for the Products, the price paid for all replacement Activators, and any interest that would have accrued on these monies, all in an amount to be proven at trial.

### SEVENTH CLAIM FOR RELIEF
### Conversion
### (*for the Classes*)

110. Plaintiff repeats the allegations contained in paragraphs 1-57 above as if fully set forth herein.

111. Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

112. Plaintiff and the Class purchased, owned, and had the right to possess and use the Products they purchased, including the battery contained in the Activators.

113. Defendant intentionally interfered with Plaintiffs' use and/or possession of the Product and has damaged the Product by purposefully programming the Activator to stop producing charge, and therefore treatment sessions, when the battery was not empty, thus depriving Plaintiff of her remaining battery charge. This caused the Products to cease functioning until another Activator was purchased and installed.

114. Plaintiff did not consent to nor was Plaintiff aware of Defendant's actions.

115. As a direct and proximate result of Defendant's intentional trespass to Plaintiff and members of the Classes' property, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the price paid for the Products, the price paid for all replacement Activators, and any interest that would have accrued on these monies, all in an amount to be proven at trial.

**CLASS ACTION COMPLAINT**

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a)     For an order certifying the Nationwide Class, the California Subclass, and the California Consumer Subclass, under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of all Classes; and naming Plaintiff's attorneys as Class Counsel to represent all Classes.

b)     For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

c)     For an order finding in favor of Plaintiff, and all Classes, on all counts asserted herein;

d)     For an order awarding all damages, including under the California Consumers Legal Remedies Act on behalf of the California Consumer Subclass, in amounts to be determined by the Court and/or jury;

e)     For prejudgment interest on all amounts awarded;

f)     For interest on the amount of any and all economic losses, at the prevailing legal rate;

g)     For an order of restitution and all other forms of equitable monetary relief;

h)     For injunctive relief as pleaded or as the Court may deem proper;

i)     For an order awarding Plaintiff and all Classes their reasonable attorneys' fees, expenses and costs of suit, including as provided by statute such as under Fed. R. Civ. P. 23(h) and California Code of Civil Procedure section 1021.5; and

j)     For any other such relief as the Court deems just and proper.

**CLASS ACTION COMPLAINT**

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 27, 2018

**FARUQI & FARUQI, LLP**

By: */s/ Benjamin Heikali*

Benjamin Heikali, Bar No. 307466
Joshua Nassir, Bar No. 318344
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90024
Telephone: 424.256.2884
Fax: 424.256.2885
E-mail: bheikali@faruqilaw.com
                jnassir@faruqilaw.com

**CLASS ACTION COMPLAINT**

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Rebecca Correia, declare as follows:

1.      I am the Plaintiff in this action and a citizen of the State of Idaho. I have personal knowledge of the facts stated herein and, if called as a witness, I could testify competently thereto.

2.      This Class Action Complaint is filed in the proper place of trial because the marketing and labeling of the Products, and the decision-making behind this marketing and labeling, occurred in Defendant's Neutrogena division, located in this District. Further, Defendant conducts a substantial amount of business in this District.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, executed on November  27 , 2018 at Boise, Idaho.

*Rebecca Correia*
Rebecca Correia